WATTS, J.,
dissenting.
Respectfully, I dissent. I would hold that, under this particular case’s circumstances, a witness’s extraordinary lack of credibility was sufficient to serve as corroboration of the defendant’s confession.
In Jones v. State, 440 Md. 450, 454-55, 103 A.3d 586, 589 (2014), this Court explained the standard of review for challenges to sufficiency of the evidence as follows:
*514 Evidence is sufficient to support a conviction where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In determining whether evidence was sufficient to support a conviction, an appellate court defers to any possible reasonable inferences that the trier of fact could have drawn from the evidence.
(Brackets, citations, ellipsis, emphasis, and internal quotation marks omitted).
In Miller v. State, 380 Md. 1, 46, 843 A.2d 803, 829 (2004), this Court explained what is sometimes known as the “corpus delicti rule” as follows:
[A] criminal conviction cannot rest solely on an uncorroborated confession____[I]t is not necessary for the corroborating evidence to be full and complete[,] or that it establish the truth of the corpus delicti either beyond a reasonable doubt or [even] by a [mere] preponderance of proof. The supporting evidence ... may be small in amount[,] and is sufficient to establish the corpus delicti if, when considered in connection with the confession or admission, it satisfies the trier of fact[] beyond a reasonable doubt that the offense charged was committed and that the [defendant] committed it.
(Emphasis added) (citations and internal quotation marks omitted).
Viewing the evidence in the light most favorable to the State, I would conclude that the evidence was sufficient for the jury to find that the alleged victim, Quentin, was lying when he testified that he could not remember whether he had had sexual intercourse with the defendant, Angela Ann Grimm (“Grimm”), Petitioner. Absent evidence of a faulty memory or mind-altering substances, no rational twenty-year-old could possibly forget whether he or she had had sexual intercourse with a stepparent within the previous five years.[1] Indeed, it *515 strains all credulity that Quentin could remember exchanging messages with Grimm on Facebook, and could even remember Grimm’s username on Facebook (“Faith”), yet could not remember whether he had had sexual intercourse with Grimm.
After the prosecutor asked the simple question “How would you describe your relationship with [] Grimm?”, Quentin repeated what he had already said four times: “I don’t remember.” Quentin’s answer was not only non-responsive and nonsensical, but also demonstrably false; after the prosecutor asked “What’s your relationship with [] Grimm like today?”, Quentin replied: “Mother.” The jury could easily reasonably infer that Quentin was reflexively falsely responding “I don’t remember” to almost every question, including questions about whether he had had sexual intercourse with Grimm. In short, I wholeheartedly agree with the Court of Special Appeals that Quentin’s testimony about his lack of memory was “preposterous.”
Having concluded that the evidence was more than sufficient to demonstrate that Quentin was lying when he testified that he could not remember whether he had had sexual intercourse with Grimm, I would hold that, as a matter of law, Quentin’s false testimony could serve as corroboration of Grimm’s confession to having had sexual intercourse with Quentin. Again, Quentin made the preposterous claim that he could not remember whether he had had sexual intercourse with Grimm. Given that Quentin would have certainly denied the allegation if it were false, a reasonable inference is that the allegation was true.
The Majority states that “disbelief is not evidence in and of itself” and cites: Hayette v. State, 199 Md. 140, 145, 85 A.2d 790, 792 (1952), a sixty-four-year-old case; Carter v. State, 10 Md.App. 50, 53, 267 A.2d 743, 745 (1970), a forty-six-year-old case; Attorney Grievance Comm’n v. Clements, 319 Md. 289, 298, 572 A.2d 174, 179 (1990), an attorney discipline case; and VF Corp. v. Wrexham Aviation Corp., 350 Md. 693, 711, 715 *516 A.2d 188, 196-97 (1998), a civil case.[2] See Maj. Op. at 506-07, 135 A.3d at 858-59; see also In re Gloria H., 410 Md. 562, 579, 979 A.2d 710, 719 (2009) (“For the reasons stated in VF Corp. [ ] and Clements, [ ] the [juvenile c]ourt erred in drawing th[e] impermissible inference” that the opposite of the juvenile’s mother’s testimony was true.).[3]
None of these five cases applies here. Both Hayette and Carter concerned the issue of whether an inference from a *517 trier of fact’s disbelief of a witness can establish scienter, or the mental element of a crime.[4] See Hayette, 199 Md. at 145, 85 A.2d at 792 (“Ordinarily[,] disbelieving evidence is not the same thing as finding evidence to the contrary. But[,] on questions of scienter[,] reason for disbelieving evidence denying scienter may also justify finding scienter.” (Citation omitted)); Carter, 10 Md.App. at 53, 267 A.2d at 745 (“Generally, disbelieving evidence provides no basis for finding evidence to the contrary; however, there is an exception involving scienter or guilty knowledge, i.[ ]e., reasons for disbelieving a denial of scienter may provide a basis for finding scienter.” (Citations omitted)). By contrast, this ease concerns the issue of whether an inference from a trier of fact’s disbelief of a witness can serve as corroboration of a defendant’s confession. In other words, this case involves corroboration of the actus reus, not proof of the mens rea,[5]
In all three of the other cases — VF Corp., Clements, and Gloria H. — this Court concluded that a party with the burden of proof could not rely on a fact-finder’s disbelief of a witness’s testimony alone to establish the party’s case. Specifically, in VF Corp., 350 Md. at 711, 715 A.2d at 196, without any direct evidence of fraud, the plaintiff relied on the jury’s discrediting the defendant’s employee’s testimony that he did not know that “his representations were false.” In Clements, 319 Md. at 298, 572 A.2d at 179, in an attempt to establish dishonesty, fraud, deceit, or misrepresentation, the Attorney Grievance Commission relied on the hearing judge’s discrediting the respondent’s testimony. And, in Gloria H., 410 Md. at 579, 979 A.2d at 719, the State had no direct evidence of the juvenile’s mother’s involvement in the juvenile’s truancy, and *518 the juvenile court based its verdict in the State’s favor on the circumstance that the juvenile court discredited the juvenile’s mother’s testimony.
The lesson of VF Corp., Clements, and Gloria H. — that a party with the burden of proof could not rely on a fact-finder’s disbelief of a witness’s testimony alone to establish the party’s case — does not apply where, as here, the issue is whether there was corroboration of a confession. By definition, in such a case, the party with the burden of proof — namely, the State — is not relying on a fact-finder’s disbelief of a witness’s testimony alone to establish the State’s case. In this case, the State offered not only evidence of Grimm’s confession, but also independent evidence, in the form of Quentin’s testimony, that, in relation to Quentin, Grimm was both a “family member” and a “household member,” as those terms are defined by Md.Code Ann., Crim. Law (2002, 2012 Repl.Vol.) (“CR”) § 3-601 (a)(3) (“ ‘Family member’ means a relative of a minor by blood, adoption, or marriage.”) and CR § 3-601 (a)(4) (“ ‘Household member’ means a person who lives with or is a regular presence in a home of a minor at the time of the alleged abuse.”), respectively. The only issue in a case such as this is whether there is corroboration of the confession— and that corroboration “may be small in amount” and need not “be full and complete or ... establish the truth of the corpus delictii, not even] by a [mere] preponderance of proof.” Miller, 380 Md. at 46, 843 A.2d at 829 (citations and internal quotation marks omitted).
In accordance with the easy-to-meet standard of proof for corroboration of confessions, and in accordance with viewing the evidence in the light most favorable to the State, I would hold that evidence of a witness’s extraordinary lack of credibility may serve as corroboration of a confession. Examining this case’s circumstances, I would conclude that Quentin’s extraordinary dishonesty — in the form of testifying that he could not recall whether he had had sexual intercourse with Grimm, a woman with whom he has a mother-son relation *519 ship — was sufficient to corroborate Grimm’s confession that she had had sexual intercourse with Quentin.
For the above reasons, respectfully, I dissent.

. Grimm confessed to a detective that she had begun a sexual relationship with Quentin in 2009, and that the sexual relationship ended in either 2012 or 2013. Quentin testified in 2014.

. In VF Corp., 350 Md. at 703, 715 A.2d at 192, this Court held that "there was insufficient evidence of fraud for [a fraud] count to have been submitted to [a] jury[.]” In this Court, in arguing that títere was sufficient evidence of fraud, the plaintiff conceded that there was no direct evidence that the defendant’s employee knew that the statements that the defendant’s employee had made were false. See id. at 711, 715 A.2d at 196. However, the plaintiff contended "that the jury ‘reasonably disbelieved [the defendant's employee] when he denied that he knew [that] his representations were false.’ ” Id. at 711, 715 A.2d at 196. This Court rejected the plaintiff’s contention, stating:
The jury’s prerogative not to believe certain testimony, however, does not constitute affirmative evidence of the contrary. As ... pointed out ... in [] Clements, 319 Md. [at] 298, 572 A.2d [at] 179[], "[a] refusal to believe evidence of a [defendant], however, does not, of itself, supply affirmative evidence of the dishonesty, fraud, deceit, or misrepresentation charged. The issue is whether [the plaintiff] presented sufficient evidence of the charge to meet the clear and convincing standard of proof,”
VF Corp., 350 Md. at 711, 715 A.2d at 196-97 (some alterations in original).

. In Gloria H., 410 Md. at 565, 979 A.2d at 712, this Court held that a juvenile’s mother was "entitled to a new trial on the issue of whether she was ‘involved’ in” her daughter’s truancy. In the juvenile court, the juvenile and her mother "testified that, although [the juvenile] arrived at her school on a regular basis, [the juvenile] rarely attended tire classes to which she was assigned.” Id. at 569, 979 A.2d at 714 (emphasis omitted). If believed, the testimony of the juvenile and her mother would have established that the juvenile's mother was not involved in her daughter’s truancy, because the juvenile’s mother had done all that she had needed to do — namely, simply ensure that her daughter arrived at school, However, the juvenile court found that, "because [the juvenile's mother]'s ‘incomprehensible’ testimony lacked credibility, the opposite of her exculpatory testimony must [have] be[en] true.” Id. at 579, 979 A.2d at 719. This Court concluded that, "[f]or the reasons stated in VF Corp. [] and Clements, [] the [juvenile c]ourt erred in drawing th[e] impermissible inference” that the opposite of the juvenile’s mother’s testimony was true. Gloria H., 410 Md. at 579, 979 A.2d at 719.

. "Mens rea [is] the guilty mind or mental state accompanying a forbidden act____[M]ens rea [is] interchangeable with the terms 'guilty mind,' ‘scienterW and ‘criminal intent[.]’ ” State Cent. Collection Unit v. Jordan, 405 Md. 420, 425 n. 7, 952 A.2d 266, 269 n. 7 (2008) (citations and some internal quotation marks omitted).

. "[G]enerally[,] there are two components of every crime[:] the actus reus[,] or guilty act[,] and the mens real,] or the guilty mind[.]” Lowery v. State, 430 Md. 477, 499, 61 A.3d 794, 807 (2013) (citation omitted).